**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

DAVID SALEWSKE,
and SHARI SALEWSKI,

    *Plaintiffs*,     CASE NO. 16-cv-13326

*v.*     DISTRICT JUDGE THOMAS LUDINGTON
        MAGISTRATE JUDGE PATRICIA MORRIS

TROTT & TROTT PC,

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS (Doc. 11)**

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss, (Doc. 11), be **DENIED**.

**II.    REPORT**

    **A.     Introduction**

On September 14, 2016, Plaintiffs David and Shari Salewski filed this suit against Defendant Trott & Trott PC alleging "violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*." (Doc. 1 at ID 1). Defendant filed a motion to dismiss on September 14, 2016, and on September 19, 2016, Plaintiffs filed an amended complaint. (Doc. 8). District Judge Ludington referred pretrial matters to the undersigned Magistrate Judge on September 20, 2016. (Doc. 9). Thereafter, Defendant filed the instant Motion to Dismiss on

1

October 5, 2016, to which Plaintiffs responded on October 26, 2016. (Docs. 11, 13). Plaintiffs also filed two supplemental briefings informing this Court of decisions in a similar case against Defendant now pending before District Judge Bell in the Western District of Michigan. (Docs. 14-15).

Plaintiffs aver that Defendant sent an "initial communication letter" as a debt collector to Plaintiffs, in connection with the collection of a debt. (Doc. 8, Ex. 1). Thereafter, they allege that Defendant placed a nonjudicial foreclosure advertisement in Cheboygan newspapers "across the county, in the Detroit Legal News, county buildings and" Plaintiffs' home "starting July 22, 2016" and extending through "August 5, 2016." (Doc. 8 at ID 62); (*id.*, Ex. 2). The ad, in relevant part, read as follows:

> THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. . . . This sale may be rescinded by the foreclosing mortgagee. In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at the sale, plus interest. . . . Default has been made in the conditions of a mortgage made by David M. Salewske and Sharon Salewske aka Sharon L. Salewske, husband and wife, original mortgagor(s), to Mortgage Electronic Registration Systems, Inc., Mortgagee . . . on which mortgage there is claimed to be due at the date hereof the sum [redacted]. . . . If the property is sold at foreclosure sale . . . the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period. . . . For more information, please call: [listing Defendant's contact information]

(Doc. 8, Ex. 2 at ID 72-74). This notice includes the Plaintiffs' names and address, the amount claimed to be owed on the debt, and the fact that Defendant is a debt collector, all while providing contact information for the homeowner to contact Defendant.

2

### B. Motion To Dismiss Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of

3

invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second

amended] complaint, and added nothing new," did not convert the motion to dismiss into a motion for summary judgment).

Because Plaintiff proceeds *in forma pauperis*, his complaint remains subject to *sua sponte* dismissal "at any time" if this Court finds that his complaint is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). In addition, federal courts hold an independent obligation to examine their own jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995). Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

### C. Analysis

Proving a prima facie case under the FDCPA generally requires showing: (1) that the plaintiff is a "consumer," 15 U.S.C. § 1692a(3); (2) that the "debt" arises out of a transaction entered primarily for personal, family, or household purposes, *id.* § 1692a(5); (3) that the defendant is a "debt collector," *id* § 1692a(6); and (4) that the defendant violated, by act or omission, an FDCPA provision. Of note, the FDCPA preempts state laws relating to debt collection practices "to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." *Id.* § 1692n. The Act provides that "a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter." *Id.*

On the present facts, the parties do not dispute that Defendant is a "debt collector," that the nonjudicial foreclosure at issue involves a "debt," and that Plaintiff is a "consumer" under

the Act.[1] Rather, Plaintiff claims that Defendant's publication constitutes a *per se* violation of the FDCPA—specifically sections 1692c(b), 1692d(4), 1692e(6)—and that, although Defendant's notice complied with M.C.L. § 600.3212, the FDCPA preempts this law insofar as it provides weaker protections than the FDCPA. Citing *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011), and *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010), Defendant posits in response that its notice was not a statement made "in connection with the collection of a debt," and therefore did not violate the FDCPA. (Doc. 11 at 6-9).

A brief overview of the statutes Plaintiffs cite is in order. Congress passed the FDCPA to curb "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Via section 1692k, the FDCPA provides a tool with which consumers may remedy abuses under the Act. Sections 1692c(b), 1692d, and 1692e outline some of these abuses. According to section 1692d, for instance, a debt collector "may not engage in any

---

[1] Until recently, mortgage foreclosure did not often present issues under the FDCPA because, according to the Sixth Circuit, an "enforcer of a security interest" fell "outside the ambit of the FDCPA for all purposes, except for the purposes of § 1692f(6)." *Montgomery v. Huntington Bank*, 346 F.3d 693, 700 (6th Cir. 2003) (quoting and agreeing with *Jordan v. Kent Recovery Serv., Inc.*, 731 F.Supp. 652, 656 (D. Del. 1990)) (internal quotation marks omitted). This exclusion remained perfectly consistent with the statutory exclusion provided for in section 1692a(6)(F)—which removed "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor" (*i.e.*, the majority of mortgagees) from the definition of "debt collector." Recently, however, the Sixth Circuit clarified its position, finding that "filing *any* type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is a debt collection under the [FDCPA]." *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 462 (6th Cir. 2013); *accord Phillips v. Miller*, No. 15-14082, 2017 WL 389727, at *3 (E.D. Mich. Jan. 10, 2017) ("In *Glazer*, the court decided that mortgage foreclosure is debt collection under the FDCPA, settling a dispute within the Sixth Circuit."). Because Plaintiffs allege that the act applies, and because Defendant concede these aspects of their claim, I will not address it further at this stage.

6

conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[t]he advertisement for sale of any debt to coerce payment of the debt." § 1692d(4). Section 1692c(b), by contrast, precludes communication "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" without "the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy." And section 1692e, which proscribes a debt collector's use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," specifically prohibits the "false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to . . . lose any claim or defense to payment of the debt" or "become subject to any practice prohibited by this subchapter." § 1692e(6)(A)-(B). "The FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent . . . and does not have to have suffered actual damages, . . . ." *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 448-49 (6th Cir. 2014). But under each provision Plaintiffs cite, the challenged statements must nevertheless be made "in connection with the collection of a debt." *See generally* §§ 1692c, 1692d, 1692e.

In *Grden*, the Sixth Circuit addressed the "in connection with" standard Defendant raises in its defense, holding that "for a communication to be in connection with the collection of a debt, an *animating purpose* of the communication must be to induce payment by the debtor." 643 F.3d at 173 (emphasis added). This "animating purpose" inquiry continues to

govern whether a statement was made in connection with the collection of a debt. The plaintiff in *Grden* had contacted the defendant, a debt collector, to "verify his account balance," and asked that verification of the amount be sent in writing. *Id.* at 171. When the defendant sent him a letter reiterating the balance due, the plaintiff sued. Because the statements themselves neither demanded payment nor threatened consequences for nonpayment—and crucially, because they were sent in response to the plaintiff's request—they constituted "merely a ministerial response to a debtor inquiry, rather than . . . a strategy to make payment more likely." *Id.* at 173. The *Grden* court drew heavily from the Seventh Circuit's opinion in *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380 (7th Cir. 2010), which dealt with a mortgagor who had defaulted on her loan. In *Gburek*, the plaintiff sought to show that the defendant made three communications "in connection with the collection of a debt": (1) a letter from the defendant telling the plaintiff that she could avoid foreclosure if she submitted certain financial information; (2) a letter from a third party telling the plaintiff to contact the defendant and attempting to collect the previously requested financial information; and (3) the defendant's contact with the third party regarding the plaintiff's debt. *Id.* at 386. Without reaching the merits of her claim, the Seventh Circuit held that each statement was indeed made in connection with the collection of a debt. *Id.* at 386-87.

Both the Sixth and Seventh Circuits took pains to emphasize that a statement need not explicitly demand payment in order to be made in connection with the collection of a debt. *See id.* at 386-87 ("[I]t was a mistake to dismiss the complaint on the sole ground that none of these communications explicitly demanded payment from [the plaintiff]."); *Grden*, 643 F.3d at

173 ("[W]e agree with the Seventh Circuit that an 'explicit demand for payment' is not always necessary for the statute to apply.").

From these cases flow a number of factors relevant to the "animating purpose" query, namely:

> (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

*Goodson v. Bank of America, N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015) (citing *Grden*, 643 F.3d at 173 and *McDermott v. Randall S. Miller & Associates, P.C.*, 835 F.Supp.2d 362, 370-71 (E.D. Mich. Dec. 8, 2011)); *cf. Wright v. Ocwen Loan Servicing, LLC*, No. 12-14446, 2013 WL 5500067, at *4-5 (E.D. Mich. Oct. 3, 2013) (declining to assess all such factors but finding a letter to be a statement made in connection with the collection of a debt because it (1) "contain[ed] a total amount due," (2) "advise[d]" the plaintiff "how to obtain a payoff statement," and (3) "inform[ed] her of the proper form and manner in which to pay" the loan). Of some import, the "'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court," *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 505 (6th Cir. 2014), unless no "reasonable jury" could find against the debt collector on this issue, *Grden*, 643 F.3d at 173.

Defendant emphatically reminds this Court that "the FDCPA does not extend to *every* communication made by a debt collector," and insists that "[h]ere, the purpose for the Notice of Sale was to satisfy the necessary statutory notice prerequisites governing foreclosure of the

9

subject mortgage by advertisement, not to induce Plaintiffs to make payment on the defaulted mortgage." (Doc. 11 at 7). Although Defendant acknowledges that the subject notice did contain a disclaimer indicating that Defendant "IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT," (Doc. 8, Ex. 2 at ID 72), it maintains that "inclusion of [an] FDCPA notice is legally irrelevant to the determination of whether a communication is a debt collection activity. . . ." (Doc. 11 at 8) (quoting *Maynard v. Cannon*, 401 F. App'x 389 (10th Cir. 2010)) (internal quotation marks omitted). Defendant also highlights guidance from the Federal Trade Commission ("FTC") suggesting that a foreclosure notice cannot be a "communication" within the definition of the FDCPA:

> [The term "communication"] . . . . does not include a notice that is required by law as a prerequisite to enforcing a contractual obligation between creditor and debtor, by judicial or nonjudicial legal process.

FTC Staff Commentary, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988).

The law proves more nuanced than Defendant admits. The Sixth Circuit cites *Maynard* with approval in *Goodson*, 600 F. App'x at 432, but does not endorse the notion that a disclaimer is legally irrelevant. Rather, the *Goodson* court merely notes that a disclaimer "did not, by itself, transform [an] informational letter into a debt collection activity," nor did it "'automatically trigger the protections of the FDCPA.'" *Id.* (quoting *Gburek*, 614 F.3d at 386 n.3). It nonetheless remains relevant to the factor analysis outlined in that case and transcribed above. And although the FTC guidance is, as Defendant notes, "directly on point," it certainly does not dictate any particular outcome in this case. (Doc. 11 at 8). Indeed, the guidance appears to craft an exception to the definition of "communication" out of whole cloth, as it conflicts directly with the Act's express language, which provides not only that

10

"communication" means "the conveying of information regarding a debt directly or indirectly to any person through any medium," § 1692a(2), but that state laws which afford consumers weaker protection than the FDCPA are *preempted* to the extent they clash with the FDCPA, 15 U.S.C. § 1692n. *See, e.g.*, *Stratton*, 770 F.3d at 448 ("'The [FDCPA] is an extraordinarily broad statute' and must be construed accordingly." (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992))); *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 399 (6th Cir. 1998) ("Initially we note the limited precedential value of FTC pronouncements regarding the FDCPA in light of the restricted scope of its power under the Act. FTC advisory opinions regarding the FDCPA are entitled to deference only to the extent that their logic is persuasive."); *cf. Heintz v. Jenkins*, 514 U.S. 291, 298 (refusing to grant conclusive weight to FTC staff commentary that the FDCPA did not apply to attorneys and law firms whose practice was limited to legal activities because such an exception fell "outside the range of reasonable interpretations of the Act's express language"). If a foreclosure notice insulted a consumer, demanded payment, or threatened foreclosure in exceedingly strong terms pursuant to a state statutory mandate, for instance, there seems little doubt that a court would find such notice to violate the FDCPA. Put simply, this Court does not find the FTC Staff Commentary convincing at this juncture.[2]

---

[2] Our sister court from the Western District—which recently dismissed Defendant's motion for judgment on the pleadings on a factually analogous case—found this guidance similarly flaccid: "[T]he FTC Staff Commentary that Defendant cites is from 1988. The Act was amended in 2010, and the Sixth Circuit has interpreted the Act in recent years. In *Heintz*, the Supreme Court rejected a 'nonbinding 'Commentary' by the Federal Trade Commission's staff' as 'unconvincing.' . . . Similarly, this Court declined to rely on the FTC's commentary, which directly refuted binding Sixth Circuit precedent." (Doc. 15 at ID 160-61); Mem. Op. & Order at 5-6, *Gray v. Trott & Trott, P.C.*, No. 1:16-cv-237 (W.D. Mich. filed Jan. 19, 2017), ECF No. 31 (citing *Glazer*, 704 F.3d at 462 ("*[A]ny* type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act.")).

Interpreting the facts in a light most favorable to Plaintiff, I cannot say that no reasonable jury could find that inducing payment of the debt was not an animating purpose behind the notice at issue. Instead it can be rationally argued that the animating purpose of the notice was to induce payment through Michigan's foreclosure-by-advertisement statute. Defendant is a debt collector assisting a mortgagee in foreclosing a mortgage on Plaintiffs' property, and identified itself as such in a notice to the public. The notice also identified Plaintiffs by name and address, and listed the amount claimed to be due. It implied that the foreclosing mortgagee could rescind the foreclosure upon payment of the debt, and addressed Plaintiffs directly, in addition to the general public, offering more information and providing a phone number. Plaintiffs did not request this notice. On its face, therefore, this foreclosure notice fulfills a number of the factors set forth in *Goodson* and derived from *Grden*—(*i.e.*, it "stated a balance due," it was not "sent in response to an inquiry or request by the debtor," it was "from a debt collector," and it "stated that it was an attempt to collect a debt")—and it arguably fulfills the more debatable factors—(*i.e.*, whether it "threatened" foreclosure, and whether it was "part of a strategy to make payment more likely"). Worth mentioning, as well, is the proverbial elephant in the room: publishing these foreclosure advertisements, (Doc. 8, Ex. 2 at 72-74), is a prerequisite under Michigan law to collecting on a nonjudicial mortgage foreclosure—finding them *not* related to collection of a debt, particularly in light of *Glazer*, would be somewhat counterintuitive.[3] A reasonable jury could certainly find that this foreclosure notice sought, at least in part, to induce payment of the debt.

---

[3] I note, again, that District Judge Bell concurs in this assessment: "Defendant published the notice of sale for the very purpose of obtaining payment on the underlying debt through Michigan's foreclosure by advertisement statute, so it was a communication made in connection with the collection of a debt." Mem. Op. & Order at 4,

That the "Notice of Sale, on its face, explicitly tracks" the provisions of M.C.L. § 600.3212, and was *also* intended to "satisfy the necessary statutory notice prerequisites governing foreclosure of the subject mortgage by advertisement," (Doc. 11 at 7), misses the mark. Even though M.C.L. § 600.3212 requires conduct that violates the FDCPA, the FDCPA preempts the Michigan requirements.[4] *Cf. Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012) ("[The defendant] wrongly assumes that a communication cannot have dual purposes. . . . A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest."). It is understandable that Defendant resists a finding that a Michigan statute's requirement, once satisfied, forms the basis for an FDCPA claim. However, under the above provisions of the FDCPA and precedential interpretations of the same, Plaintiffs have stated a claim. At this stage, therefore, Plaintiffs' complaint should survive Defendant's Motion to Dismiss.

---

*Gray v. Trott & Trott, P.C.*, No. 1:16-cv-237 (W.D. Mich. filed Nov. 10, 2016), ECF No. 26; *see also* Mem. Op. & Order at 3, *Gray v. Trott & Trott, P.C.*, No. 1:16-cv-237 (W.D. Mich. filed Jan. 19, 2017), ECF No. 31 ("A review of the language and structure of the notice of sale shows that it was sent for the purpose of obtaining payment—by compulsion—of the underlying debt, not to inform Plaintiff of a change in his loan.").

[4] This Court is not unsympathetic to Defendant's "damned if you do, damned if you don't" plight on the present facts. The question whether to comply with long unchallenged state laws such as M.C.L. § 600.3212 does appear to foment an unavoidable risk of litigation for entities in Defendant's position. This is an uncomfortable predicament to face. But the FDCPA's broad sweep often promotes this phenomenon, particularly where, as here, the activity is entwined with debt collection. *Cf. Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227, 235 (3d Cir. 2005) (finding the FDCPA applicable to service of a mortgage foreclosure packet including a summons, complaint, and related items required under Florida law). Moreover, a mistake of law on this count does not safeguard defendants from liability under the Act. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 582-83 (2010). This Court's sympathy, therefore, cannot support a judgment favorable to Defendant.

### D. Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Defendant's Motion To Dismiss, (Doc. 11), be **DENIED**.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Date: March 16, 2017                    S/ PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 16, 2017　　　　　　　　　　By s/Kristen Castaneda
　　　　　　　　　　　　　　　　　　　　Case Manager